Between THE PATERSON AND HUDSON RIVER RAILROAD
COMPANY, complainants, and THE MAYOR AND COM-
MON COUNCIL OF JERSEY CITY, defendants.

1. Certainty to a common intent is sufficient in bill or answer.

2. If a fact is stated anywhere in the stating part of the bill, with legal
certainty, and is material, it is well pleaded, and therefore admitted by
the demurrer.

3. "*Inasmuch as*" is sufficiently direct and positive; more direct than
any statement under a *whereas* in a declaration, than which a bill in equity
need not be more certain.

4. The rule, as to the jurisdiction of this court to prevent, by its inter-
position, the further litigation of a matter at law, is that "courts of equity
will not interfere before a trial at law, nor until the right has been satis-
factorily established at law. But if so established, it is not material what
number of trials have taken place."

This cause was referred by the Chancellor to George H.
Brown, one of the masters of the court. The material facts
disclosed by the bill, and the causes assigned as grounds of
demurrer, appear in the opinion of the master.

THE MASTER. This cause was referred by the Chancellor
to the subscriber, one of the masters of the court, to hear and
report upon the question presented.

The object of the bill is to prevent further litigation of a
question which the complainants allege has been fully settled
by repeated decisions. It is properly called a bill of peace.

The defendants have demurred, and, by the demurrer, ad-
mit all the facts in the bill which are well pleaded. In or-
der to the consideration of the question, it is necessary to
inquire what these facts are.

The bill states (among other things) that complainants
were incorporated under the name of "The President and
Directors of the Paterson and Hudson River Railroad Com-
pany," by an act of the legislature of this state, passed in
1831, with power to hold lands necessary or expedient to

the object of the incorporation, that by the said act, after the expiration of ten years, the company were to pay yearly a tax of one-half of one per cent. upon the capital stock paid in, and that no further or other tax or impost should be levied or assessed upon the company.

That soon after the passage of the act, the company was organized according to its provisions and constructed a railroad, and have since paid large sums of money to the state, on account of tax.

That the company purchased a number of lots at Jersey City for the purpose of a depot, that they were used only for that purpose, and were necessary and expedient to the objects of said incorporation.

That the defendants were incorporated by act of the legislature, February 22d, 1838, by the name of "The Mayor and Common Council of Jersey City."

That in the year 1839, the defendants assessed the said lots at Jersey City for taxes, for state, city, and county tax, John R. Goodman being assessor—that to try the question whether the city had the right to make such assessment, the complainants brought a *certiorari* to the Supreme Court—that in each of the years, 1840 (Henry Southmayd being assessor) and 1841 (Charles Gardner being assessor), the city again assessed the said lots, and the complainants brought their *certiorari* to the Supreme Court from each assessment.

That while the three suits upon *certiorari* were pending, undetermined, viz., 9th May, 1842, the attorneys of the complainants and defendants agreed, in writing, that the trial of the suit against Gardner's assessment should be conclusive of all the three suits, and judgments be entered in them all, in conformity with the decision of the Supreme Court in that case, and of the Court of Errors, if a writ of error should be taken.

That in November Term, 1842, the Supreme Court set aside the Gardner assessment, and defendants took a writ of error to the Court of Errors, and in July, 1845, that court affirmed the judgment of the Supreme Court—that, thereupon judg-

ments were entered in all the three suits, according to the agreement.

That in the years 1845 and 1846, the defendants again assessed the same lots for taxes, and that they were advertised for sale.

Prayer for perpetual injunction. To this bill the defendants demur, and assign several causes, which, it is understood, embrace all the grounds upon which the defendants rely to sustain their demurrer. First—cause of demurrer is, in substance, that the bill does not set forth whether the assessments by the defendants, and which was adjudged by the Supreme Court to have been illegally made, was for state, county, or city purposes, nor whether the assessment of 1845 and 1846 were for state, county, or city purposes, so that the bill does not show whether the assessments of 1845 and 1846 are of the same character as those adjudged to be illegal.

If this were true, in fact, the demurrer should be sustained, but, upon examination, the bill shows that the decision of the Supreme Court in the Gardner case covered, so far as respects these defendants, every kind of *tax* known to the laws of this state.

The bill states expressly, that the assessment by Goodman was for *state*, *city*, and *county* tax.

The Gardner case was taken, by agreement of the parties, to represent the others in the whole question involved. The agreement, in effect, is that the Gardner case should be taken as a state of facts by which the other cases were to be determined, and that the argument, deliberation, and judgment in that case should be conclusive in them all. Under this agreement, the assessment of Goodman was, by the judgment of the Supreme Court, set aside, and it is not for the defendants to say that the judgment so rendered, with their consent, is not decisive of the question involved in that case, especially when it is not shown, affirmatively, that the facts in it and that of Gardner, differ.

But again it is averred, with sufficient certainty, that the *same question* arose in all the cases. The rules of this court

require certainty in pleading, but certainty to a common intent is sufficient in bill or answer. The bill, after stating the assessment by Goodman particularly, and the subsequent assessments generally, introduces the agreement referred to as follows: "That" (the parties, &c.,) "in order to save the expense of all these suits, and inasmuch as the same question would arise in all the said suits entered into, &c., setting forth the agreement." If, after the statement, particularly of the first assessment, the bill had alleged that the subsequent assessments were like it, it would, besides being sufficiently certain, have had the merit of certainty without prolixity, but saying that the same question arose or would arise, is equivalent to saying that the same state of facts existed, or that the same kind of taxes had been laid in each case.

Some question was made upon the argument as to the form and connection of this averment. It was said not to be such a statement of facts as should be held to be admitted by the demurrer. The form of the allegation is direct and positive. "Inasmuch as," is equivalent to saying, seeing that or the fact being that the same question would arise, &c. This is more direct than any statement under a whereas in a declaration, than which, to say the least, a bill in equity need not be more certain.

It is true that the allegation is *not* found in connection with the statements of the bill, as to the form and effect of the assessments, and that it *is* found in connection with the statement of the agreement and is introductory to it. But if the fact is stated anywhere in the stating part of the bill, with legal certainty, and is material, it is well pleaded, and therefore admitted by the demurrer.

The demurrer then admits the judgment of the Supreme Court in all the cases to have been that taxes for state, county or city purposes, against the complainants for these depot lots, were illegal.

It was not, therefore, material to state in the bill for what kind of taxes the assessments of 1845 and 1846 were made. If for taxes at all, they must have been for one of the three

kinds adjudged to be illegal. If either had been legal in the opinion of the court, the assessment for it would have been sustained. *State* v. *Falkenbridge*, 3 *Green's Rep.* 320.

When the bill speaks of taxes it cannot be construed to mean assessments against the complainants, as owners of the depot lots, for improvements by which these lots would be especially benefited, such as grading the streets or paving the walks in front of them. Such assessments I do not regard as taxes within the legal meaning of that term. A tax is laid upon all persons and their property alike, but such assessments as are here referred to, are made against certain property, because it will, more than other property, be increased in value by the expenditure of the money so assessed. They are called assessments to distinguish them from ordinary taxes. The second cause of demurrer is, that the bill does not show whether the complainants seek to enjoin the defendants against making assessments for city purposes or county purposes.

The bill prays that the defendants may be enjoined against assessing any tax upon the lots in question. According to the view taken above, this is sufficiently definite. It embraces all the three kinds of tax assessed by Goodman—state, county and city tax.

The third cause of demurrer is, that the bill does not show any sufficient matter of equity to entitle the complainants to the relief sought.

This presents the question whether the adjudication of this matter at law has been such as to satisfy this court that further litigation of it should be prevented by its interposition.

The rule as to this jurisdiction of the Court of Chancery, is thus stated by Judge Story : " Courts of equity will not interfere in such cases before a trial at law, nor until the right has been satisfactorily established at law. But if so established, it is not material what number of trials have taken place, whether two only, or more." 2 *Story's Eq. Com.*, § 859.

This is not a technical rule by which the jurisdiction of

this court is made to depend upon the number of trials. If it were so, it might be contended that three cases were tried, though the parties agreed to have them tried at one time. But I do not so regard the rule. In some cases one trial would not be considered as conclusive or satisfactory, as when facts are in dispute, depending on the testimony of witnesses, and the trial necessarily by jury. But in these cases the facts were admitted; a question of law only to be considered, and that deliberately done in the Supreme Court and Court of Errors, with the same result in each court. Nothing appears or is suggested to create a doubt, but that this decision is satisfactory and would be sustained.

Indeed, when it is considered that this same question has been decided at law in several cases between other parties in the same way, it is hardly to be expected that the law courts would again hear it argued, unless something to justify a re-argument was shown there, which does not appear here. The exemption of the railroad companies of this state from taxes under the same charter provision, has been so fully and frequently argued and decided, that no change in the rule can be anticipated, unless some new fact bearing upon the question, or some new view of the question itself is presented. If any such exists, it ought to appear by answer to the bill.

It is, therefore, respectfully submitted to the Chancellor, that the demurrer ought to be overruled.

CITED in *Mor. Can. & Bkg. Co.* v. *Jersey City*, 1 *Beas.* 227; *Hoagland* v. *Township of Del.*, 2 *C. E. Gr.* 115.